**Merlee EILAND, Plaintiff–Appellant,**

v.

**TRINITY HOSPITAL, Defendant–Appellee.**

**No. 97–3165.**

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1998.

Decided July 24, 1998.

Armand L. Andry (argued), Oak Park, IL, for Plaintiff–Appellant.

Oswald G. Lewis, Hubert O. Thompson (argued), Carney & Brothers, Chicago, IL, for Defendant–Appellee.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Merlee Eiland sued her employer, Trinity Hospital, alleging disparate treatment and retaliatory discharge based on racial discrimination in violation of Title VII and 42 U.S.C. § 1981. The district court granted summary judgment to Trinity Hospital. Ms. Eiland appeals that decision. For the reasons set forth below, we affirm the district court's judgment.

## I

### BACKGROUND

Ms. Eiland, an African American, worked in a dozen hospitals after she became a Licensed Practical Nurse in 1971, and in none of them was she disciplined or fired. However, on February 19, 1996, after she had worked in the Occupational Health Center ("OHC") of Trinity Hospital for almost 2 years, the hospital terminated her employment. Ms. Eiland's suit, filed after receipt of her right-to-sue letter from the Equal Employment Opportunity Commission, alleges that the hospital intentionally discriminated against her because of her race and retaliated against her because she filed complaints of discrimination.

The allegations that she was discharged because of her race are based on several incidents involving a hospital staff physician. According to Ms. Eiland, on three occasions the staff physician showed her newspaper articles that portrayed African Americans in negative ways. She alleges that he commented on the articles in a racially biased way. He also made, according to her allegations, derogatory statements about African Americans sitting in the hospital's waiting room. The complaint also alleges that Ms. Eiland overheard the staff physician using the word "nigger" when telling his co-workers a story about a slave owner in pre-civil war Mississippi. When she confronted him, however, he denied using the term. Nevertheless, she reported the incident to Jan Kois, the OHC's supervisor. Kois turned the complaint over to the Human Resources Department; it found that no improprieties had occurred. Ms. Eiland's complaint alleges that her superiors did nothing to stop the derogatory comments about African Americans made by a staff physician and by other white staff.

Ms. Eiland's complaint also states that she administered a measles, mumps and rubella injection ("MMR shot") to a patient after a staff physician failed to advise her that the patient was pregnant and after the patient had stated that she was not pregnant. She reports that she was terminated by the hospital "allegedly because of the medication error," R.1 ¶ 21, but actually for racial reasons.

The hospital responds that Ms. Eiland's supervisor, Jan Kois, terminated Ms. Eiland's employment because "she was a threat to patients in terms of negligent patient care." R.18, Ex.B at 60. On February 16, 1996, Ms. Eiland administered an MMR shot to a pregnant female patient. Because an MMR shot could harm the mother and the unborn child, the hospital's policy requires that, before a female patient is given an immunization shot, the nurse must read the patient's chart, give the patient a brochure explaining the risks of the shot, talk to the patient about the risks, have the patient sign the brochure, and ask whether the patient is

pregnant. The staff physician submitted an incident report to Kois stating that a patient had reported to him that Ms. Eiland had given her an MMR shot on February 16 without inquiring about her pregnancy status. The staff physician asserted that he had examined the patient on February 9, 1996, a week before the injection was given, and had indicated on her chart that she was pregnant. He also had made the chart available to Ms. Eiland.

On February 19, 1996, nursing supervisor Kois suspended Ms. Eiland pending an investigation of the incident. She then conducted a hearing on the matter and determined that Ms. Eiland had not followed the hospital policy, had not considered the protocol important and had shown no remorse for her mistake or for the possible harm to the unborn child. Later that day, Kois terminated Ms. Eiland's employment with Trinity Hospital based on this incident.

The district court granted the hospital's motion for summary judgment. It noted that Ms. Eiland's complaint and affidavit had alleged that the staff physician did not advise Ms. Eiland that the patient was pregnant and that the patient herself had told Ms. Eiland that she was not pregnant. However, stated the court, Ms. Eiland failed to include those assertions in her Rule 12(N) statement or to support her allegations with evidence. The court then determined that Ms. Eiland's disparate treatment claim failed because she established no link between the staff physician's allegedly racist statements and her termination by Jan Kois. The court held that Ms. Eiland also failed to establish her retaliation claim: She did not demonstrate that the hospital's nondiscriminatory reason for her discharge—that Kois believed the nurse was a threat to patient safety—was pretextual. The court also concluded that the record did not permit any racial or retaliatory animus on the staff physician's part to be imputed to Kois' final decision. It granted summary judgment to the hospital.

## II

## DISCUSSION

### A. Summary Judgment

■ Our review of a district court's entry of summary judgment is plenary. *See*

*Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir.), *petition for cert. filed*, 67 U.S.L.W. 3093 (U.S. July 2, 1998) (No. 98–37). Our review considers the record in the light most favorable to the nonmoving party, Ms. Eiland, and draws all reasonable inferences in that party's favor. *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir.1998). We shall uphold summary judgment whenever "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Nevertheless, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Ms. Eiland may avoid summary judgment by setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). An issue is genuine if it must be resolved at trial because the evidence, seen in the light most favorable to Ms. Eiland, would permit a reasonable factfinder to decide the issue in favor of Ms. Eiland. *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997).

### B. Disparate Treatment Claim

■ In her complaint, Ms. Eiland alleges that the hospital treated her differently and intentionally discriminated against her because of her race. She brings the same allegation under Title VII (count I) and 42 U.S.C. § 1981 (count II). Because we analyze both § 1981 and Title VII discrimination claims in the same manner, *see Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 176 (7th Cir.1996), we shall review both of Ms. Eiland's racial discrimination claims together. According to Ms. Eiland, we can infer from the staff physician's racist actions and comments that he had a discriminatory

motive in filing the incident report which led, in part, to her termination. She does not claim that the decisionmaker, Kois, was motivated by racial animus; rather, she seeks to impute the staff physician's racial animus to Kois.

The district court examined the staff physician's actions—the articles he had shown Ms. Eiland and the statements she considered racial slurs—and concluded that "a reasonable jury could not infer from these actions and comments alone that [the staff physician] was motivated to report Eiland because of her race." R.34 at 6. The court also determined that Ms. Eiland did not demonstrate that the doctor's statements and articles related to the incident report he filed with Kois. For that reason, it held, her disparate treatment claim failed.

 Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer "to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). When racial discrimination is based on a claim of disparate treatment, "[p]roof of intentional discrimination is required." *Gonzalez*, 133 F.3d at 1031 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). An employee may demonstrate her employer's intentional discrimination by providing either direct or indirect evidence. Direct evidence is evidence which, " 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.' " *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997) (quoting *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir.1989)). According to Ms. Eiland, the staff physician's racist comments about the articles he brought to her and his other statements that negatively referred to African Americans are direct evidence of discriminatory intent.

 We agree with the district court that such comments do not support a direct inference that race was a determining factor in Ms. Eiland's discharge. The statements, made over time, are stray workplace remarks that will not qualify as direct evidence of discrimination unless Ms. Eiland can show that the remarks were related to the employment decision at issue, namely her termination. *See Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir.1996); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116 (7th Cir.1992). Ms. Eiland was unable to show this link. Moreover, when such statements are made by a nondecisionmaker, normally they cannot provide the basis for a determination of discrimination. *See Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir.1997) (concluding that plaintiff's effort to build a prima facie case on a director's remark that "all Americans are stupid" failed because plaintiff was fired by the general manager, not the director). Ms. Eiland cannot impute the staff physician's racial animus to Kois, the decisionmaker, because she fails to relate his offensive statements to the incident report he subsequently filed with Kois or, most importantly, to Kois' subsequent decision to discharge Ms. Eiland.

 Under the indirect approach to proving racial discrimination, Ms. Eiland was required to establish that she was in a protected class, was performing her job satisfactorily, and was fired when others outside the protected class were treated more favorably. *See Gonzalez*, 133 F.3d at 1032. Ms. Eiland claims that she is an African American employee with a good performance record who was fired and that no white employee had been treated as she had. She asserts that she was subjected to a very prejudiced environment and that the reason given by the hospital for her dismissal—her giving an MMR shot to a pregnant woman—was pretextual because several issues are in dispute: whether the woman was pregnant; whether Kois simply accepted the version of events given by the white doctor rather than by her, the African–American nurse; and whether the severe penalty of termination of her job was required by this incident.

The district court had acknowledged that Ms. Eiland disputed some of the hospital's factual assertions about the event that led to

her discharge, but pointed out that she had offered no evidentiary support for her position. More importantly, she offered no evidence that the reason for the discharge was pretextual. Examining the record, the district court concluded that, because Ms. Eiland admitted in her deposition that she gave the patient the booklet about the MMR shot to read, she in effect "admitted wrongdoing in other ways by not specifically inquiring as to [the patient's] pregnancy status, not ensuring that [the patient] understood the booklet information, and not reading [the patient's] chart before treating her." R.34 at 8. The court determined that the record supported the conclusion that those admissions and the nurse's lack of remorse led to Kois' termination decision; it further held that no racial or retaliatory animus on the staff physician's part could be imputed to Kois' final decision.

Assuming that Ms. Eiland has succeeded in establishing her prima facie case of racial discrimination, we consider the hospital's response. It offered a legitimate, nondiscriminatory reason for firing her: Ms. Eiland was a threat to patient safety because she gave an MMR shot to a pregnant woman. The burden of proof then shifted back to Ms. Eiland to demonstrate by a preponderance of the evidence that the hospital's proffered reason was pretextual or phony. *See Plair*, 105 F.3d at 348; *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995).

Ms. Eiland points out the issues in dispute: whether Ms. Eiland was aware the patient was pregnant; whether the hospital records (which were not found) could support such allegations; whether Ms. Eiland had to be fired because of this incident. She accuses the decisionmaker Kois of believing the version of the events given by the white doctor—a person who had shown discriminatory animus. However, as we noted above, the staff physician's comments were stray remarks; even his alleged use of an offensive

word was a single incident addressed to others, not Ms. Eiland, and it does not support a claim that he had demonstrated racial animus. *See Wallace*, 103 F.3d at 1400 ("If the other employee merely utters a hostile stereotype, he is not manipulating the decision."). In addition, Ms. Eiland failed to make any link between any of the staff physician's statements and her discharge.[1] She offered no evidence that the staff physician had any responsibility for termination decisions or for terminating her in particular and no evidence that the staff physician was able to influence the firing decision. *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1293 (7th Cir.1997). Therefore the staff physician's remarks were not actionable.

We also pointed out above that Kois, and not the staff physician, was Ms. Eiland's supervisor and the decisionmaker in the hospital's decision to terminate Ms. Eiland. After Kois received the incident report, she spoke with the staff physician and Ms. Eiland's immediate supervisor, Barbara Corsey. Kois then met with Ms. Eiland and asked her to explain the circumstances under which she gave the patient the MMR immunization. Only after Ms. Eiland admitted that she had not informed the patient of the dangers of the MMR shot, and only after Ms. Eiland failed to show any remorse or concern for the possible adverse health consequences for the patient or her baby did Kois decide to fire her. The record reflects that Kois acted independently and only after she evaluated the circumstances, including Ms. Eiland's version of those circumstances. There is no evidence to support the inference that Kois acted as the "cat's paw" for the staff physician. *See Willis*, 118 F.3d at 547; *Wallace*, 103 F.3d at 1400. The record simply will not support the conclusion that there is any causal connection between the staff physician's allegedly "illicit nature and the employer's ultimate decision." *Willis*, 118 F.3d at 547. What is crucial about Kois' decision is that

---

1. Having come to these conclusions, we believe that Ms. Eiland's reliance on *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446 (7th Cir.1994), is inapposite. Dey stated that "[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Id.* at 1459. Ms. Eiland failed to demonstrate that the staff physician's allegedly racist comments reflected a discriminatory animus or that they tainted the decisionmaker's assessment of Ms. Eiland and affected the decisionmaker's termination decision.

she honestly believed her reasons for discharging Ms. Eiland and that she had a reasonable basis for that belief. *See Bahl*, 115 F.3d at 1291 ("[W]hen we consider whether an employer's justification for dismissing its employee is pretextual, the inquiry is not whether the reason for the firing was a correct business judgment but whether the decisionmakers honestly acted on that reason."). Ms. Eiland has not presented evidence that calls into question the truthfulness of Kois' honestly held reasons for her termination. *See Plair*, 105 F.3d at 349. Accordingly, we conclude that the district court's grant of summary judgment to the hospital on the disparate treatment claim was proper.

## C. Retaliation Claim

The retaliation provision of Title VII forbids an employer to "discriminate against any individual … because he has made a charge … or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a). An employee must establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. *See Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir.1998) (citation omitted). Here, the hospital does not dispute that Ms. Eiland has met her burden of proving a prima facie case: She lodged a complaint against the staff physician for his racist statements on January 16 or 17, 1996; she was fired on February 19, 1996; and there is

a causal link between the two events.[2] However, the hospital has presented a legitimate, nondiscriminatory reason for her discharge: her improper administration of the MMR shot to a pregnant patient and her subsequent lack of remorse for the act. At this stage, Ms. Eiland has the burden of rebutting the hospital's nondiscriminatory reason for her termination by showing that the reason was pretextual and that its actual reason was discriminatory or retaliatory. *See Talanda*, 140 F.3d at 1096; *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir.1997). Ms. Eiland's retaliation claim fails at this point, just as it did under the analysis of her disparate treatment claim. She cannot demonstrate that Kois did not honestly believe that Ms. Eiland improperly administered the MMR shot to a pregnant patient and that she lacked any feeling of remorse or concern for the patient or the unborn child. Consequently, Ms. Eiland failed to raise a genuine issue of material fact that might allow a jury to find for her on her retaliation claim.[3]

## Conclusion

For the reasons discussed above, we hold that there are no genuine issues of material fact concerning Ms. Eiland's allegations of disparate treatment and retaliatory discharge. We affirm the district court's grant of summary judgment to the defendant Trinity Hospital.

AFFIRMED.

---

**2.** Our cases indicate that a closely related sequence of events is sufficient to present a prima facie case: The causal nexus of the third step of the prima facie case has been held to be sufficiently demonstrated when the time period between the complaint and the firing was a day or a week. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 & nn. 5–6 (7th Cir.1997) (citing cases). Although we hesitate to acknowledge that the causal link was sufficiently demonstrated in this case, in light of the hospital's declining to raise the challenge to the prima facie case we shall turn to the issue of pretext.

**3.** Ms. Eiland did not argue explicitly that her complaints about the staff physician's racist comments led to her discharge in retaliation for those complaints. We note, nevertheless, as we did in the disparate treatment analysis, that the staff physician was not the decisionmaker and that his statements thus were not probative of a decisionmaker's intent to retaliate. In addition, it is unrebutted on this record that Kois was not swayed by the hospital physician's "subjective and possibly racially biased evaluation" of Ms. Eiland. *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir.1997). Kois, like the decisionmaker in *Willis*, afforded Ms. Eiland an opportunity to substantiate her claim and made her own independent evaluation. *See id.* at 547–48.