In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3913

ELSIE P. RANDOLPH,

*Plaintiff-Appellant*,

*v.*

INDIANA REGIONAL COUNCIL OF
    CARPENTERS AND MILLWRIGHTS,
    MILLWRIGHT LOCAL UNION 1003,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 92—**Larry J. McKinney**, *Chief Judge*.

———————

ARGUED APRIL 4, 2006—DECIDED JUNE 28, 2006

———————

Before POSNER, WOOD, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, a member of a local millwrights union (a millwright nowadays is a construction worker who does welding, bolting, and other metal work), brought suit for age and sex discrimination against her union (she was 59 at the time of the alleged discrimination), of which she is the sole female member. She appeals from the grant of summary judgment for the union.

The union maintains an "out of work" list for its members. Construction companies consult the list when they

need additional millwrights for a project. In all of 2002 the plaintiff earned only $1,334 as a millwright, compared to $23,193 for the average male member of the union who sought work through the out-of-work list. She attributes the difference to the fact that she was not on the list for half that year and the last quarter of the preceding year, even though—she testified—she had called up the union official responsible for the list, Rick Bowersock, every month and asked to be put on it. The district judge, without mentioning this evidence, rejected her discrimination claims because she had failed to show that the male millwrights had obtained millwright work exclusively from the list and that her experience and qualifications were comparable to theirs.

The judge overlooked the plaintiff's main theory of discrimination, which pivoted on the union's refusal to place her on the out-of-work list. The union defends its refusal on the ground that she hadn't asked that her name be placed on the list; that her testimony to that effect was false. But a jury might believe her, and infer—in the absence of any contention by the union other than that she was lying—that she had indeed been kept off the list because of her sex or her age. (More likely the former than the latter. Unions tend to favor older workers because they need union protection more than younger ones do, as we noted in *Chicago & North Western Transportation Co. v. Railway Labor Executives' Ass'n*, 908 F.2d 144, 147 (7th Cir. 1990); see also Bruce A. Herzfelder & Elizabeth E. Schriever, Comment, "The Union Judgment Rule," 54 *U. Chi. L. Rev.* 980, 1013-14 (1987).) With only the two alternative explanations for why she was not on the list on the table—discrimination and that she didn't ask to be on it—a jury that disbelieved the second could rationally believe the first. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

147-48 (2000); *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 709 (7th Cir. 2004).

On this theory of liability, the evidence concerning the difference between the plaintiff's wages and that of the average male member of the union would bear on causation and damages. Maybe her wages were so low in 2002 relative to the men's not because she wasn't on the list but because there was little hiring off the list that year or because she didn't have the qualifications that the construction companies were looking for, and the men did. The judge was right that she could not make out a prima facie case of discrimination just by showing that men had higher wages than she; there are too many alternative explanations for such a difference. See *Cullen v. Indiana University Board of Trustees*, 338 F.3d 693, 701-02 (7th Cir. 2003); *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 363 (7th Cir. 2001); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282-83 (9th Cir. 2000). But she can get a bit of help from evidence that a younger male millwright, Dan Blacketer, who like her complained that members of other locals were working on a job site that was within Local 1003's jurisdiction, obtained a positive response from Bowersock; she got nothing. Now she may have gotten nothing because she didn't have Blacketer's qualifications. But Bowersock did not say that. Instead he denied that she had raised the jurisdictional issue with him. If the jury disbelieved his denial, it could infer that he didn't respond to her because he favors young males over older women regardless of qualifications.

The union argues that really there is no factual issue concerning the plaintiff's claim to have called the union monthly to be put on the list. To bolster her testimony, she had presented her telephone records, which showed four calls to the union in seven months. (The last call got her

on the out-of-work list.) She testified that those were the only months for which she had been able to find her records. Bowersock testified that he did not receive any calls or messages from her asking to be put on the list (except the last, to which he responded positively), and the union points out that all but the last call were very short, one of them lasting, according to her own records, for only 50 seconds, which, the union argues, is too short for her to have asked to be put on the list. That is obviously wrong, and though it might persuade a gullible juror, it cannot eliminate a triable issue. Neither can Bowersock's sworn denial that the plaintiff had asked to be placed on the list in the first three calls. His denial merely sets up a swearing contest between the plaintiff and him. The judge was not entitled to give more weight to the defendant's evidence than to the plaintiff's. *Payne v. Pauley*, 337 F.3d 767, 771-72 (7th Cir. 2003).

The telephone records provide some support for the plaintiff's testimony, but all that matters at this stage is that they do not refute it. Of course a party can point to evidence submitted by his opponent and argue that actually the evidence disproves the opponent's case, as the union is doing. But a party cannot get summary judgment simply by pointing out infirmities in evidence used by its opponent to bolster the opponent's testimony. *Wilson v. Williams*, 997 F.2d 348, 349-50 (7th Cir. 1993); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 n. 5 (9th Cir. 2004). Oral testimony if admissible will normally suffice to establish a genuine issue of material fact, though the qualification "if admissible" is important, particularly in discrimination cases; a plaintiff cannot get to the jury merely by testifying that she thought the employer or other alleged discriminator had a discriminatory purpose. *Murray v. Chicago Transit Authority*, 252 F.3d 880, 888 (7th Cir. 2001);

*Stagman v. Ryan*, 176 F.3d 986, 996 (7th Cir. 1999); *Filippo v. Northern Indiana Public Service Corp.*, 141 F.3d 744, 750 (7th Cir. 1998); *Quinones v. Buick*, 436 F.3d 284, 290 (1st Cir. 2006). Plaintiffs cannot qualify as mind readers. But a plaintiff can testify, as the plaintiff in this case did, that she made a phone call and said thus-and-so in the ensuing conversation, or left a message on an answering machine (the union had an answering machine) that said thus-and-so. That is testimony to a statement she made, not, as the union would have it, testimony "to her own subjective beliefs of discriminatory conduct."

The grant of summary judgment to the union was therefore erroneous.

REVERSED AND REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*